UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GEORGE S., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. C22-5543-BAT <br><br> **ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE WITH PREJUDICE** |

Plaintiff appeals the denial of his application for Supplemental Security Income. He contends the ALJ erred by (1) failing to determine at step three of the sequential analysis that plaintiff meets or medically equals Listing 12.05 for Intellectual Disorder; (2) improperly assessing residual functional capacity ("RFC"); and (3) determining at steps four and five that plaintiff could return to past relevant work and other work. Dkt. 10. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

During the April 2021 ALJ hearing, plaintiff amended his alleged onset date of disability to the protective filing date of October 3, 2017. Tr. 51. The ALJ denied benefits in a June 3, 2021 decision. Tr. 15–33. At step two, the ALJ determined plaintiff has the severe impairments of kidney stones, hypertension, benign prostatic hypertrophy, and a learning disorder. Tr. 17–18. At

step three, the ALJ determined plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a Listed Impairment, including Listing 12.05 (Intellectual Disorder). Tr. 18–20. The ALJ assessed that plaintiff has the RFC to perform medium work with additional physical and mental limitations, including that plaintiff can perform simple, routine tasks. Tr. 21–31. At step four, the ALJ determined plaintiff could perform his past relevant work as a landscape laborer because the work did not require the performance of activities precluded by the assessed RFC. Tr. 31–32. At step five, the ALJ found that plaintiff's RFC also would allow him to perform a number of occupations that exist in significant numbers nationally: kitchen helper, industrial cleaner, and automotive detailer. Tr. 32–33. The ALJ therefore found plaintiff to be not disabled. Tr. 33. As the Appeals Council denied plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1–3.

**DISCUSSION**

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff has failed to demonstrate that the ALJ unreasonably evaluated the record when (1) determining that plaintiff does not have an impairment that meets or medically equals Listing 12.05; (2) assessing RFC; and (3) determining that plaintiff could perform past relevant work

and occupations that exist in significant numbers nationally. The Court finds that the ALJ's decision was supported by substantial evidence and was not the result of misapplying the law.

### 1. Listing 12.05 (Intellectual Disorder)

Plaintiff contends that because he received a Full Scale IQ ("FSIQ") score of 70 during a February 2018 consultative psychological examination, the ALJ was obligated to consult a medical expert to determine whether plaintiff also satisfied the other criteria in Listing 12.05 for an Intellectual Disorder. Dkt. 10, at 8–13; *see* Tr. 668. The contention is unpersuasive because plaintiff sets forth no other evidence that suggests he could carry his burden of persuasion at step three that his intellectual impairment meets or medically equals the criteria set forth in Listing 12.05. 20 C.F.R. § 416.925(d); *Burch v. Barnhart*, 400 F.3 676, 679, 683 (9th Cir. 2005).

Plaintiff does not assert his intellectual impairment can satisfy 12.05(**A**), only that there should have been further investigation into his claim of having an impairment that meets or medically equals Listing 12.05(**B**). *See* Dkt. 10, at 8–13. In relevant part, a claimant such as plaintiff must satisfy the following criteria to demonstrate an impairment meeting or medically equaling Listing 12.05(B): (1) a FSIQ of 70 or below; (2) significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (a) understanding, remembering, or applying information; (b) interacting with others; (c) concentrating, persisting, or maintaining pace; and (d) adapting or managing oneself; and (3) the evidence about current intellectual and adaptive functioning and about the history of the disorder demonstrates or supports the conclusion that the disorder began prior to age 22. *See* 20 C.F.R. Pt. 404, Subpt. P, App 1, § 12.05(B). The ALJ found plaintiff could not satisfy the paragraph (B) criteria of Listing 12.05 (and other listings) because plaintiff's mental impairments do not cause at least two "marked" limitations or one

"extreme" limitation in the domains set forth in the listing. Tr. 19–21. That is, the ALJ determined plaintiff (a) has no more than a moderate limitation in understanding, remembering, or applying information; (b) has no limitation in interacting with others; (c) has no more than a moderate limitation in concentrating, persisting, or maintaining pace; and (d) has no more than a mild limitation in adapting or managing himself. Tr. 19–21. In finding plaintiff could not demonstrate the paragraph (B) criteria with respect to several listings, the ALJ did not explicitly reference the 12.05(B) criterion demonstrating that the disorder began before the age of 22.

Plaintiff neither refers to the Listing 12.05(B) criteria nor demonstrates how the evidence shows that his impairment satisfies the paragraph (B) criteria other than by broadly stating "*a reasonable person could equally find* that this plaintiff, with his test results and history in school, in the military, and in the workplace, show[s] a lifelong pattern of cognitive impairment so significant that he meets or equals Listing 12.05." Dkt. 10, at 12 (emphasis added). These omissions are fatal deficiencies. First, if a reasonable person could "equally" find for or against plaintiff on this issue, the Court must affirm the Commissioner's decision. *See Thomas*, 278 F.3d at 954. Second, although plaintiff states that he "will not trouble the Court with a full recitation of the Listing [12.05]," Dkt. 10, at 9, he therefore declines to plausibly connect evidence to the criteria in a manner that would satisfy his burden of persuasion that he has an impairment that meets or equals Listing 12.05(B). Third, plaintiff fails to meaningfully challenge the ALJ's conclusion that plaintiff suffers from no more than moderate limitations in mental functioning with respect to (a) understanding, remembering, or applying information; (b) interacting with others; (c) concentrating, persisting, or maintaining pace; (d) adapting or managing himself. *See* 20 C.F.R. Pt. 404, Subpt. P, App 1, § 12.05(B). Instead, plaintiff argues generally the ALJ erred by interpreting the medical evidence and plaintiff's daily activities. Dkt. 10, at 9–12. For

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 4

example, plaintiff argues the ALJ could not show that plaintiff's daily activities would translate to a workplace environment and should not have concluded that plaintiff's playing pool, riding transit, and taking care of himself suggested that plaintiff had an RFC less severe than asserted. Dkt. 10, at 11–12. The step 3 analysis, however, precedes the question of RFC and, if met, precludes considering RFC at all. Plaintiff's conclusory argumentation about the ALJ's RFC evaluation without reference to Listing 12.05(B) and the step three analysis is therefore largely irrelevant. Fourth, neither in the hearing nor in the briefing does plaintiff set forth supportive evidence that, in accordance with Listing 12.05(B), his intellectual disorder began before the age of 22 years. Acceptable evidence that the intellectual impairment began before the age of 22 includes: tests of intelligence or adaptive functioning; school records indicating a history of special education services based on intellectual functioning; an Individualized Education Program (IEP), including a transition plan; reports of academic performance and functioning at school; medical treatment records; and interviews or reports from employers. 20 C.F.R. Pt. 404, Subpt. P, App 1, § 12.00H(3)(b). Aside from the February 2018 FSIQ score—taken when plaintiff was in his 50s—plaintiff refers to no other evidence that might suggest his intellectual impairment began before the age of 22. Instead, plaintiff proposes that although plaintiff graduated from high school, he presumptively showed a listing-level intellectual disorder before the age of 22 by the very fact that he was enrolled in special education. At the hearing, plaintiff's attorney did not refer to Listing 12.05 by name; rather, counsel's full presentation of the issue was that because of the February 2018 FSIQ score, "I think we may have a listing-level case here." Tr. 61. The argumentation at the hearing and in the current briefing is insufficient to demonstrate a listing-level case.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 5

In sum, plaintiff has failed to address or refute the ALJ's conclusion that plaintiff had no more than moderate limitations in any mental domain set forth in the paragraph (B) criteria of Listing 12.05(B); and plaintiff has failed to provide any evidence that the intellectual impairment that could be suggested by a February 2018 FSIQ score of 70 began before the age of 22 aside from disagreement with the ALJ's conclusion. Plaintiff also cannot support his assertion that the ALJ was required to call a medical evidence to demonstrate whether his mental impairment meets or medically equals Listing 12.05(B). Contrary to plaintiff's assertions, it is the ALJ's duty, not a medical expert's duty, to reconcile the medical evidence and to determine whether a claimant is disabled. 20 C.F.R. § 416.927(d); *cf. Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (holding that nothing in the regulations, case law, or substantial evidence standard required the ALJ to defer to the expertise of a non-treating, non-examining medical sources when evaluating the consistency of medical evidence). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). Here the evidence was not ambiguous and the record was not inadequate. The ALJ was not required to call a medical expert based on plaintiff's behalf based on a speculative and conclusory proposition that plaintiff may meet or equal a listing because the record otherwise contains no such evidence.

Plaintiff has failed to demonstrate the ALJ's decision at step three regarding plaintiff's inability to show his impairment meets or medically equals Listing 12.05(B) was unsupported by substantial evidence or was the result of the misapplication of the law.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 6

**2. RFC Assessment**

Plaintiff challenges the ALJ's RFC assessment via attacking the ALJ's evaluation of his mental impairments in the step three analysis and the ALJ's evaluation of his mental and physical impairments in steps four and five. Dkt. 10, at 8–16. As support, plaintiff challenges the ALJ's evaluation of the 2018 opinion of examining psychologist Dr. Burton Zung, Ph.D., the 2020 opinion of examining physician Dr. Philip Gibson, Ph.D., and plaintiff's daily activities. *Id.* Plaintiff is unable to demonstrate the ALJ misevaluated the evidence as a matter of fact or law.

The ALJ determined that plaintiff has the RFC to perform a range of simple medium work based upon mostly benign objective clinical findings, the findings of reviewing physicians and psychologists, and the analysis of plaintiff's discounted self-reporting. Tr. 21–31. Plaintiff neither challenges the ALJ's choice to discount plaintiff's subjective testimony nor undermines the reasonableness of the ALJ's RFC assessment.

First, plaintiff contends his history of kidney stones and prostatic hypertrophy would impact both productivity and attendance, but in the same paragraph concedes "*there is no evidence sufficient to challenge the physical exertion classification of medium exertion*" and "[t]hese limitations would *only arguably* impact his residual functional capacity in regard to productivity and attendance." Dkt. 10, at 13 (emphases added). Plaintiff's own brief thus concedes that the ALJ's assessment of physical RFC was reasonable and supported.

Second, plaintiff argues the RFC assessment should have given more weight to the opinions of examining psychologists Drs. Gibson (Tr. 763–766) and Zung (Tr. 665–71) and should have accounted for the opined limitations beyond restricting plaintiff to simple and repetitive tasks. Dkt. 10, at 13–16. The ALJ found unpersuasive Dr. Gibson's opinion that plaintiff is unable to manage funds in his own best interest because it was inconsistent with and

unsupported by plaintiff's ability to purchase items in stores and use public transportation; plaintiff's lack of a guardian or conservator; and plaintiff's ability to enter legally binding agreements on his own behalf. Tr. 30; *see, e.g.*, Tr. 101–02, 200). The ALJ found unpersuasive Dr. Gibson's opinion that plaintiff would have difficulty performing work activities on a consistent basis without special or additional instructions because it was inconsistent with and unsupported by the claimant's ability to cook, bake, play pool, watch movies, paint the interior of a dwelling, and perform a number of other activities, including taking public transportation, without need of special or additional instructions. Tr. 30; *see, e.g.*, Tr. 50, 199–201, 227–30, 248–51, 666, 670, 734, 764; *see also* Tr. 764 (Dr. Gibson noting: "The claimant's concentration, persistence, and pace were within normal limits. No redirection was required."). The ALJ found unpersuasive Dr. Zung's opinion that plaintiff has limited understanding, difficulty reconciling acknowledged limitations on reading and writing, prominent functional limitation, and an inability to manage benefit payments. Tr. 29. The ALJ did so because Dr. Zung based his opinion in large part on the FSIQ score of 70, which was not consistent with plaintiff's ability to perform tasks such as cooking, baking, playing pool, watching movies, using a stove, using an oven, painting the interior of a dwelling, performing a wide variety of cleaning tasks, understanding and managing his own medical treatment, and entering into legally binding agreements on his own behalf. *Id.* Moreover, the ALJ discounted Dr. Zung's opinion as inconsistent with the medical evidence and the record as a whole, including opinions of reviewing physicians and psychologists, plaintiff's minimal mental health treatment, plaintiff's typically alert and oriented mental state, and unremarkable/intact mental health findings in other exams. *Id.*; *see* Tr. 666 (Dr. Zung noting: "He sustained participation in a session of about 2.5 hours duration. Observation of visual orientation, activity level, task orientation and task

perseverance was unremarkable. He demonstrated no episodes of distractibility or impulsive behavior."); *see, e.g.*, Tr. 64–75, 77–92, 674–75, 695, 873. Plaintiff addresses none of this evidence, instead repeating that the restrictions opined by Drs. Gibson and Zung should have been accepted without modification. *See* Dkt. 10, at 13–16. Such conclusory argumentation does not demonstrate that the ALJ misevaluated the evidence or the applicable law.

Third, plaintiff challenges the ALJ's evaluation of plaintiff's activities of daily living in the step three discussion, arguing that they do not undermine Dr. Gibson's and Dr. Zung's opined limitations. Tr. 10–13. Plaintiff takes particular issue with the ALJ's reasoning that plaintiff's ability to use public transportation and hobby of shooting pool with friends twice a week suggest that plaintiff may have greater mental abilities than asserted, including the abilities to keep track of transit schedules and locations, to concentrate, to engage in some degree of complex reasoning, and to engage socially with others. Dkt. 10, at 10–13 (citing Tr. 25–26). Although plaintiff argues there is no indication that plaintiff engaged in complex transit planning or ever played in competitive games of pool that might implicate high levels of concentration and reasoning, he has failed to indicate how the ALJ unreasonably interpreted plaintiff's daily activities to be indications of why his intellectual impairments might not be as severe as asserted or opined by Drs. Gibson and Zung. *See, e.g.*, Tr. 666 (Dr. Zung noting that plaintiff "arrived on time for the evaluation, having traveled to my office using the city bus system"), Tr. 670 (Dr. Zung noting, "He can travel in the community using the city bus system.").

Plaintiff has failed to demonstrate that the ALJ's RFC assessment was unsupported by substantial evidence or was the result of a misapplication of the law.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 9

### 3. Past Relevant Work and Occupations that Exist in Significant Numbers Nationally

The ALJ found plaintiff was not disabled at step four because he retained the RFC to perform his past relevant work as a landscape laborer and found that plaintiff was not disabled at step five because there was other work in the national economy that plaintiff could perform given his background and RFC. Tr. 31–33. In making these non-disability findings at steps four and five, the ALJ relied upon the vocational expert's testimony that an individual with plaintiff's functional limitations could perform his past relevant work and other work in significant numbers in the national economy. *See* Tr. 58–59.

Plaintiff has failed to show the ALJ erroneously assessed plaintiff's RFC. The ALJ thus posed hypothetical questions to the vocational expert that captured all of plaintiff's established functional limitations and the vocational expert's responsive testimony was substantial evidence for the ALJ's non-disability finding. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Plaintiff has failed to show that the ALJ's evaluation of steps four and five was unsupported by substantial evidence or the result of the misapplication of the law.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 13th day of March, 2023.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 10